IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FAIRFIELD HENRY, LLC          :          CIVIL ACTION
                              :
              v.              :
                              :
PHILADELPHIA INDEMNITY        :
INSURANCE CO., et al.         :          NO. 12-5079

MEMORANDUM

McLaughlin, J.                                 March 13, 2014

This case relates to a lease agreement between the plaintiff, Fairfield Henry LLC ("Fairfield Henry"), and the defendant Y.A.P.A. Apartment Living, Inc. d/b/a Project Transition ("Project Transition").  Fairfield Henry owned and managed a multi-building apartment community called "Henry on the Park."  Fairfield Henry leased several apartments at Henry on the Park to Project Transition.  Project Transition used those apartments to operate a community based treatment program for clients who were mentally ill.

Once Project Transition began operating its program at Henry on the Park, the conditions of the community began to deteriorate.  On July 14, 2009, one of Project Transition's clients set a fire in her apartment.  The fire caused extensive damage to one of the buildings at Henry on the Park, including damage to the apartments and personal property of residents who were not clients of Project Transition.

1

Following the fire, a series of lawsuits commenced. Fairfield Henry sued Project Transition for damage to Henry on the Park and for the cost of lost rents and certain repairs. That lawsuit settled.  Two lawsuits were filed by tenants of Henry on the Park against Fairfield Henry and Project Transition.  Those lawsuits settled.  A purported class action was also filed by tenants of Henry on the Park against Fairfield Henry and Project Transition.  Class certification was denied, except for a limited class seeking injunctive relief, and individual tenant claims for damages were severed.

This lawsuit was then filed by Fairfield Henry against Project Transition and its insurer, the Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity").  Fairfield Henry seeks reimbursement from Project Transition and Philadelphia Indemnity for attorney's fees and costs and settlement payments in the three tenant lawsuits.  It also seeks a declaratory judgment declaring that Philadelphia Indemnity has a duty to defend and indemnify Fairfield Henry in the three tenant lawsuits, and in any future lawsuits filed by Henry on the Park tenants which relate to Project Transition's presence.

Before the Court are cross motions for summary judgment.  For the reasons discussed herein, the Court will deny the defendants' motion for summary judgment.  The Court will

grant in part and deny in part the plaintiff's motion for summary judgment.

I.   Procedural History

        The Court bifurcated discovery in this matter.  See 11/12/12 Scheduling Order (Doc. No. 11).  Preliminary discovery related to the defendants' obligation to indemnify and defend the plaintiff under either the Philadelphia Indemnity insurance policy or the lease between the plaintiff and Project Transition.  The parties filed these summary judgment motions following the preliminary stage of discovery.  Although the plaintiff included information regarding damages in its motion, at oral argument the defendants requested that additional discovery regarding the amount of damages be allowed if the defendants' motion is denied.

        The Court will therefore decide only questions of liability at this juncture.  The Court will address additional discovery on damages in a separate order.

II.   Summary Judgment Record[1]

        Fairfield Henry owned and managed the Henry on the Park apartment complex from December 2006 through December 2009. Henry on the Park consists of seven apartment buildings

---

[1] The facts contained herein are undisputed unless otherwise noted.

(buildings A through G), a rental office, pool, tennis courts,
and a gym, located at 7901 Henry Avenue in Philadelphia,
Pennsylvania.  In 2008 and 2009, Project Transition leased 17
apartments at Henry on the Park in various buildings within the
complex.  Pl.'s Statement of Facts at ¶ 1; Pl.'s Mot. Exh. 1
("Def.'s Response to Pl.'s Request for Admissions") at No. 3.

A.   Project Transition

Project Transition provides apartment-based
therapeutic communities for individuals with histories of
psychiatric problems.  Project Transition describes its program
as providing a broad range of integrated treatment,
rehabilitation, and independent living services to persons 18 to
65 years old with serious and persistent mental illness.
Project Transition's program is operated in "therapeutic
communities" within suburban apartment complexes, such as Henry
on the Park.  According to Project Transition, most of its
clients have had multiple prior hospitalizations or
rehabilitation experiences which were unsuccessful.  More than
two-thirds of Project Transition's clients also have "diverse
addiction profiles" including substance abuse, parasuicidal
behaviors, and other self-injurious or self-defeating behaviors.
Def.'s Response to Pl.'s Request for Admissions at No. 1; Def.'s
Mot. Exh. B ("Project Transition Description") at 1-2.

To operate its program, Project Transition utilizes several apartments within a complex for workshops, medication management, therapies, meetings, and other services provided by Project Transition staff.  Clients also live in the apartments within the complex.  Some clients share an apartment with other clients.  The clients' apartments are scattered throughout the complex, and are not adjacent to each other.  Project Transition Description at 1-2.

> B.   <u>The Apartment Lease Contract</u>

Project Transition signed a lease agreement with Fairfield Henry for each apartment that it leased at Henry at the Park.  One of the apartments leased by Project Transition was apartment B-409.  In May 2009, Project Transition accepted Patricia Gilberthorpe into the program, and placed her in apartment B-409 at Henry on the Park.  Def.'s Response to Pl.'s Request for Admissions at Nos. 3-4, 10-11.

The lease agreements, including the lease for apartment B-409, contained a provision which required Project Transition to reimburse Fairfield Henry for damages to the apartment building.  That provision provides:

> You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or your guests or occupants.

Pl.'s Mot. Exh. 2 ("Apartment Lease Contract") at ¶ 13.

The lease agreements also prohibited Project Transition's clients from engaging in certain conduct including behaving in a loud or obnoxious manner, and disturbing or threatening the rights, comfort, health, safety, or convenience of others in or near the apartment community.  Id. at ¶ 21.

The leases also required Project Transition to obtain liability insurance.  Such liability insurance must have named Fairfield Henry as an interested party.  Project Transition obtained liability insurance under a Commercial General Liability Policy ("CGL Policy") issued by Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity").  Id. at ¶ 9, Lease Addendum: Liability Insurance Required of Resident; Pl.'s Mot. Exh. 3 ("CGL Policy").

    C.   The July 14, 2009 Fire

On July 14, 2009, Ms. Gilberthorpe set a fire in apartment B-409 which caused property damage to B-409 and other apartments and common areas in the B building at Henry on the Park.  Def.'s Response to Pl.'s Request for Admissions at No. 12.

D.   <u>Philadelphia Indemnity Insurance Policy</u>

At the time of the fire, Project Transition was insured under the Philadelphia Indemnity Insurance Company CGL Policy.  In the Health Services Endorsement, the CGL Policy identifies as additional insureds:

> f. Managers, Landlords, or Lessors of Premises – Any person or organization with respect to their liability arising out of the ownership, maintenance, or use of that part of the premises leased or rented to you . . . .

Pl's Mot. Exh. 4 ("Health Services Endorsement") at 4.  A Certificate of Liability Insurance issued in connection with the CGL Policy identifies Fairfield Henry as a Certificate Holder and adds insurance coverage for Henry on the Park.  Pl.'s Mot. Exh. 5 ("Certificate") at 1.

The CGL Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  The CGL Policy applies to "bodily injury" and "property damage" only if caused by an "occurrence" as defined by the policy.  An "occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  The Policy provides that Philadelphia Indemnity has the right and duty to defend the insured in any suit seeking damages for bodily injury or property damage that is covered by the Policy.  CGL Policy at 1.

7

The CGL Policy contains a clause which alleviates Philadelphia Indemnity from the duty to defend and indemnify if it is "excess insurance."  The CGL Policy is excess if there was another insurance policy in effect which applies to covered claims for bodily injury and property damage, if the other policy was effective prior to the effective date of the CGL Policy.  Id. at 11-12.

   E.   The Fairfield Henry v. Project Transition Lawsuit

      On September 11, 2009, Fairfield Henry filed suit against Project Transition in the Philadelphia Court of Common Pleas.  In that suit, Fairfield Henry brought claims for negligence and breach of contract.  The Complaint alleged that the July 14, 2009 fire and the efforts to extinguish that fire caused damage to Henry on the Park in excess of $2 million.  The case was resolved by a settlement agreement executed on June 28, 2011.  Def.'s Mot. Exh. N ("9/11/09 Fairfield Henry Complaint") at ¶¶ 17, 22, 24-27; Def.'s Mot. Exh. O ("Fairfield Henry Settlement Agreement").

      The settlement agreement states that it applies to "claims of negligence and breach of contract arising out of the damages sustained as a result of the July 14, 2009 fire at the Henry on the Park Apartments" asserted by Fairfield Henry and its insurance company, AXIS Insurance Company, against Project

Transition.  The settlement agreement is an agreement by Fairfield Henry and AXIS "to settle their claims against [Project Transition] and avoid further litigation."  Fairfield Henry Settlement Agreement at 1-2.

The settlement agreement specifically defines "damages" as:

> [T]he damages claimed to have been sustained included cleaning, trash and rubbish removal, security services, engineering services, repairs and replacement of floors, walls, ceilings, windows, doors, fixtures, wiring, elevator repairs and improvements, lost rents, asbestos remediation, Fairfield Henry's insurance deductible, and other expenses as per the statement of loss appended hereto and identified as Appendix 1, and collectively referred to herein as "damages."

Id. at 1.  Appendix 1 to the agreement sets out specific repair costs to be covered by the settlement.  The list of repairs does not include costs for damage to personal property of any of the Henry on the Park tenants.  Id. at Appendix 1.

The release provision of the settlement agreement released Project Transition and Philadelphia Indemnity from all past, present, and future claims "arising out of a fire on July 14, 2009 at the Henry on the Park Apartments . . . particularly referenced at the Court of Common Pleas, Philadelphia County, September Term 2009, No. 06334 . . . for those damages arising out of the July 14, 2009 fire . . . ."  Id. at 2.

The settlement agreement also specified that it did not constitute a release of Fairfield Henry's crossclaims for indemnification and contribution in the three then pending cases brought by Henry on the Park tenants: Guynn v. Fairfield Henry, LLC, et al., Goldfarb v. Fairfield Henry, LLC, et al., and Oehrtman v. Fairfield Henry, LLC, et al.. Id. at 3.

F.   Oehrtman, Goldfarb and Guynn Lawsuits

Three lawsuits were filed in 2010 by Henry on the Park residents in the Philadelphia Court of Common Pleas alleging damages as a result of the fire started by Ms. Gilberthorpe.

A class action was filed in May 2010 against Fairfield Henry, Project Transition, and other defendants (hereinafter "Oehrtman lawsuit"). Philadelphia Indemnity was not a named defendant. The Oehrtman lawsuit sought certification of the following class:

> All persons residing at or who were tenants of Henry on the Park from the date of execution of the first lease between Landlord and Project Transition through the trial of this matter and who were damaged thereby (the "Class").

Def.'s Mot. Exh. K ("Oehrtman Complaint") at ¶ 15.

The Oehrtmann lawsuit alleged claims regarding deterioration of safety, security, and quiet enjoyment in the Henry on the Park apartments as a result of Project Transition's

presence.[2]  The Complaint alleged that there were questions
common to the class regarding: (1) whether Fairfield Henry was
negligent in allowing Project Transition's clients to live at
Henry on the Park; (2) whether Fairfield Henry was negligent in
allowing Project Transition to choose which patients would live
at Henry on the Park; (3) whether Fairfield Henry was negligent
in failing to provide adequate security in light of the risks of
having Project Transition present; (4) whether damage from the
fire set by Ms. Gilberthorpe resulted from Fairfield Henry's
negligence; etc.  Id. at ¶ 18, pages 28-47.

        The Complaint alleged that many class members suffered
physical injuries, were displaced, and incurred uninsured out-
of-pocket costs as a result of the fire.  It also alleged that
Project Transition patients stole packages, and were observed
loitering, roaming in the hallways, sleeping in the lobby and
vandalizing the property.  It alleged that many tenants had
verbal altercations with Project Transition's clients over
issues of cleanliness and disposal of trash, and some tenants

---

        [2]  The Oehrtman Complaint asserted claims for (1) breach of
quiet enjoyment, (2) violation of statutory landlord duties, (3)
breach of contractual duty to provide adequate security, (4)
breach of the lease agreement, (5) breach of duty to screen
tenants, (6) breach of duty to provide adequate security, (7)
violation of unfair trade practices and consumer protection law,
(8) negligence against Project Transition, (9) nuisance against
Project Transition, and (10) intentional or negligent infliction
of emotional distress.  Oehrtman Complaint at 28-47.

were subjected to harassment by Project Transition's clients. The class members alleged that they no longer felt safe at Henry on the Park because of the presence of Project Transition, and that the atmosphere at Henry on the Park has drastically changed, and was not what Fairfield Henry advertised, due to Fairfield Henry's lease to Project Transition.  Id. at ¶¶ 47, 90, 116, 118, 120-121.

Fairfield Henry asserted crossclaims against Project Transition for contribution, indemnification, and breach of the lease agreement.  In an April 3, 2011 Order, the plaintiffs' Motion for Class Certification was denied, except that the Order indicated that a class of current residents of Henry on the Park seeking to have the current landlord provide additional security would be certified upon proof of adequate financial resources. The plaintiffs' claims for damages were severed.  The Order indicated that the plaintiffs could re-file their claims for damages in individual actions.  Def.'s Mot. Exh. L ("Fairfield Henry Answer to Oehrtman Complaint) at 71-73; Def.'s Mot. Exh. M ("Oehrtman Order") at 1-2.

Also in May 2010, Samantha Goldfarb and John O'Malley filed a complaint in the Philadelphia Court of Common Pleas, alleging damages as a result of the fire started by Ms. Gilberthorpe (hereinafter "Goldfarb lawsuit").  The Goldfarb Complaint named Fairfield Henry and Project Transition as

defendants, among others.  Philadelphia Indemnity was not a
defendant.  The Goldfarb plaintiffs lived in apartment B-407.
They alleged that the plaintiffs suffered losses to personal
property as a result of the fire in excess of $100,000.[3]  Most of
their personal possessions were damaged or destroyed.  They also
alleged that they suffered mental and emotional anguish.  Pl.'s
Mot. Exh. 7 ("Goldfarb Complaint") at ¶¶ 2-3, 76-79.

Fairfield Henry asserted crossclaims for contribution,
indemnification, and breach of the lease agreement against
Project Transition.  The Goldfarb lawsuit settled, and was
discontinued pursuant to a joint order, signed by all parties,
to settle, discontinue, and end the lawsuit with prejudice.
Def.'s Mot. Exh. I ("Fairfield Henry Answer to Goldfarb
Complaint") at 56-58; Def.'s Mot. Exh. J ("Goldfarb Order").

In October 2010, Henry Guynn and Carolyn Dancy filed a
complaint in the Philadelphia Court of Common Pleas, alleging
damages as a result of the fire started by Ms. Gilberthorpe
(hereinafter "Guynn lawsuit").  The Complaint named Fairfield

---

[3] The Goldfarb Complaint asserted claims for (1) breach of
quiet enjoyment, (2) violation of statutory landlord duties, (3)
breach of contractual duty to provide adequate security, (4)
breach of the lease agreement, (5) failure to screen tenants,
(6) failure to provide adequate security, (7) violation of
unfair trade practices and consumer protection laws, (8)
negligence against Project Transition, and (9) intentional or
negligent infliction of emotional distress.  Goldfarb Complaint
at 16-35.

Henry and Project Transition as defendants, among others.
Philadelphia Indemnity was not a defendant.  The plaintiffs
lived in apartment B-509.  They alleged that they suffered
mental anguish and loss to personal property resulting from the
fire in excess of $50,000.[4]  Def.'s Mot. Exh. E ("Guynn
Complaint") at ¶ 23-24, 28-30.

      Fairfield Henry asserted crossclaims for contribution,
indemnification, and breach of the lease agreement against
Project Transition.  The parties in the Guynn lawsuit settled
and entered into a joint order to settle, discontinue and end
the lawsuit with prejudice.  Def.'s Mot. Exh. F, ("Fairfield
Henry's Answer to Guynn complaint") at 25-27;  Def.'s Mot. Exh.
G ("Guynn Order").

      While the Oehrtman, Goldfarb, and Guynn lawsuits were
pending, Fairfield Henry sent letters to Philadelphia Indemnity
demanding that Philadelphia Indemnity defend and indemnify
Fairfield Henry for the costs incurred in those lawsuits.
Fairfield Henry sent such letters on February 18, 2011 and July
13, 2011, to which Philadelphia Indemnity did not respond.
Fairfield Henry sent another letter on September 20, 2011.
Philadelphia Indemnity responded by refusing to defend or

---

[4]  The Complaint asserted claims for (1) breach of quiet
enjoyment, (2) breach of contractual duty to provide adequate
security, (3) breach of duty to provide adequate security, (4)
negligence of Project Transition, (5) nuisance, (6) negligent
infliction of emotional distress.  Guynn Complaint ¶¶ 31-80.

indemnify Fairfield Henry.  Pl.'s Mot. Exh. 12, Exh. 11
("Fairfield Henry Demand Letters").

     G.   <u>Goldfarb and Guynn Settlement Agreements</u>

     The plaintiffs in the <u>Goldfarb</u> and <u>Guynn</u> lawsuits
entered into settlement agreements with Fairfield Henry and
Project Transition.  Philadelphia Indemnity indemnified Project
Transition for settlement payments made by Project Transition to
the <u>Goldfarb</u> and <u>Guynn</u> plaintiffs.  Pl.'s Mot. Exh. 19
("Philadelphia Indemnity's Response to Pl.'s Request for
Admissions") at No. 16.

     The <u>Goldfarb</u> Settlement Agreement contained a release
provision in which the plaintiffs released Project Transition,
Fairfield Henry, and Connecticut General Life Insurance Company
from all claims and causes of action.  Pl.'s Resp. Exh. K
("<u>Goldfarb</u> Settlement Agreement") at 1-3.

     The <u>Goldfarb</u> Settlement Agreement specifically
provided that:

> This settlement agreement is not and is not intended
> to be, nor is it, a release of [Project Transition],
> or any of their representatives, insurers, agents,
> servents, employees, partners, administrators,
> successors, or assigns, or any of them, by Fairfield
> Henry, LLC [], or any of their officers, directors,
> employees, parent or subsidiary entities, agents or
> insurers.

<u>Id.</u> at 3.

The <u>Guynn</u> Settlement Agreement provided only for the release of the plaintiffs' claims against Project Transition and Fairfield Henry.  Pl.'s Resp. Exh. M ("<u>Guynn</u> Settlement Agreement") at 1-4.

The <u>Guynn</u> Settlement Agreement specifically provided that:

> This settlement agreement and release is not intended to be, nor is it, a release of [Project Transition], or any of their representatives, insurers, agents, servants, employees, partners, associates, heris, executors, administrators, successors or assigns, or any of them, by Fairfield Henry [], or any of their officers, directors and employees, and any and all other persons, firms, corporations, associations, parent or subsidiary entities, agents, insurers or other entities, their heirs, executors and administrators.

<u>Id.</u> at 4.

III. <u>Analysis</u>

A.   <u>Standard of Review</u>

A party is entitled to summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the basis of its motion.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden of production shifts to the nonmoving party, who must set forth specific facts

showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In reviewing a motion for summary judgment, the court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion.  Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

B.   Defendants' Motion for Summary Judgment

The defendants make several arguments for summary judgment in their favor.  First, they argue that they are entitled to summary judgment because Fairfield Henry released the defendants from liability for the claims in the current suit in the Fairfield Henry Settlement Agreement.  Second, they argue that this lawsuit is barred by the doctrine of res judicata because Fairfield Henry's crossclaims in the Oehrtman, Goldfarb, and Guynn lawsuits were discontinued with prejudice.

Third, the defendants argue that Project Transition is immune from Fairfield Henry's claims under the Pennsylvania Mental Health and Procedures Act.  Fourth, Philadelphia Indemnity argues that it is entitled to summary judgment on Fairfield Henry's claims against it for declaratory judgment and breach of contract.  Philadelphia Indemnity argues that it did not have a duty to defend or indemnify Fairfield Henry in the

17

Oehrtman, Goldfarb, and Guynn lawsuits because Fairfield Henry
was not an "insured" under the CGL Policy.

Finally, Philadelphia Indemnity argued in its motion
that it is entitled to summary judgment because the CGL Policy's
coverage of Fairfield Henry was "excess," and therefore
Philadelphia Indemnity had no duty to defend or indemnify
Fairfield Henry in the Oehrtman, Goldfarb, and Guynn lawsuits.
At oral argument, the defendant abandoned this argument.

The Court will address each of the defendants'
arguments in turn.  For the reasons discussed below, the Court
will deny the defendants' motion for summary judgment.

### 1.   Fairfield Henry Settlement Agreement

The defendants argue that the release provision in the
settlement agreement which resolved Fairfield Henry, LLC v.
Project Transition bars the plaintiff's complaint in this case
in its entirety.  The defendants argue that the settlement
agreement released the defendants of any and all claims related
to the fire, except for crossclaims in the three then-pending
cases and any crossclaims in future cases brought by tenants.
The defendants argue that, because the three pending cases
settled and were dismissed, Fairfield Henry forfeited its
crossclaims against the defendants.  The defendants also argue
that, if the settlement agreement does not bar Fairfield Henry's

claims entirely, the settlement agreement did not preserve the breach of contract claim against Project Transition or any claims against Philadelphia Indemnity, because it only carved out contribution and indemnification crossclaims in the tenant suits to which Philadelphia Indemnity was not a party.

Fairfield Henry argues that the settlement agreement was explicitly limited to specific property damage suffered by Fairfield Henry.  Also, the settlement agreement carved out claims for indemnification or contribution in the three pending cases, and those claims were not waived by settlement and dismissal of those cases.  The Court agrees with the plaintiff.

"A signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake."  Bowersox Truck Sales and Serv., Inc. v. Harco Nat'l Ins. Co., 209 F.3d 273, 279 (3d Cir. 2000) (quoting Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 892 (3d Cir. 1975)). In interpreting the terms of a release, the intention of the parties governs, and that intention must be gathered from the language of the release.  Id. (quoting Three Rivers Motors Co., 209 F.3d at 892).

In determining the intent of the parties to a release, the Court must look at the agreement as a whole.  Lesko v. Frankford Hospital-Bucks County, 15 A.3d 337, 342 (Pa. 2011). "An interpretation will not be given to one part of the contract

19

which will annul another part of it."   <u>Capek v. Devito</u>, 767 A.2d
1047, 1050 (Pa. 2001).

     The defendants argue that the settlement agreement
released all present and future, known and unknown claims by
Fairfield Henry against Philadelphia Indemnity, and all present
and future, known and unknown claims by Fairfield Henry against
Project Transition except for those specifically identified in
the carve out provision.

     The language of the release is not as broad as the
defendants contend, however.   The settlement agreement sets
forth a limited definition of "damages" for the purposes of the
agreement.   Fairfield Henry Settlement Agreement at 1.
"Damages" were limited to specific property damage suffered by
Fairfield Henry as a result of the fire, including cleaning,
trash and rubbish removal, security services, engineering
services, repairs and replacements of floors, walls ceilings
windows, etc.   <u>Id.</u>   Those damages are listed individually in an
appendix to the agreement.   <u>Id.</u> at Appendix 1.

     The release provision of the agreement provides that
Fairfield Henry releases Project Transition and Philadelphia
Indemnity:

          of and from all, and all manner of, liability, actions
          and causes of action, suit, debts, dues, accounts,
          bonds, covenants, contracts, agreements, judgments,
          claims and demands whatsoever, in law or equity,
          arising out of a fire on July 14, 2009 at the Henry on

> the Park Apartments in Philadelphia, Pennsylvania,
> particularly referenced at the Court of Common Pleas,
> Philadelphia County, September term 2009, No. 06334,
> which against [Project Transition] and any other
> person, partnership, firm, corporation or other entity
> charged or chargeable with responsibility or liability
> and their administrators, successors or assigns, they
> ever had, now have or which their administrators,
> successors or assigns, or any of them hereafter can,
> or may have, for those damages arising out of the July
> 14, 2009 fire, from the beginning of the world to the
> date of these presents.
>
> This settlement agreement and general release fully
> and completely disposes of any and all claims that
> have been brought or could have been brought by
> [Fairfield Henry] for the damages claimed in this
> lawsuit.

Id. at 2-3.

This is the provision on which the defendants base their argument that all claims against them brought by Fairfield Henry are barred by the release.  Based on the unambiguous language of the settlement agreement as a whole, however, the release provision releases the defendants from all claims by Fairfield Henry only for the "damages" resulting from the July 14, 2009 fire that are specifically listed in the agreement.

The release does not release the defendants from any claims by Fairfield Henry for damages resulting from the fire that are not listed in the settlement agreement.  This lawsuit arises from damages that are not listed in the settlement agreement.  The agreement also specifies that it is a release of those claims asserted in the specific complaint filed by

21

Fairfield Henry in the Court of Common Pleas.  This lawsuit is not for claims that were asserted in that complaint.  This lawsuit, therefore, is not barred by the terms of the settlement agreement.

Additionally, the release provision specifically carved out crossclaims for indemnification and contribution in the then-pending lawsuits.  The agreement specifically provides:

> Notwithstanding the foregoing, this settlement agreement and general release does not prevent [Fairfield Henry] from asserting crossclaims for indemnification or contribution in the pending civil cases of:
>
> Oehrtman v. Fairfield Henry, LLC, etal.
> (CCP Philadelphia County, May Term 2010, No. 2410);
>
> Goldfarb v. Fairfield Henry, LLC, etal.
> (CCP Philadelphia County, May Term 2010, No. 3693);
>
> Guynn v. Fairfield Henry, LLC, etal.
> (CCP Philadelphia County, November Term 2010, No. 3578)
>
> or any other civil action(s) that may be filed by tenant(s) of the Henry on the Park Apartments, except, however, to the extent that any such crossclaims assert claims and/or damages covered by this settlement agreement and general release.

Id. at 3.

This language further evidences the parties' intent not to release claims by Fairfield Henry against the defendants for any damages asserted in the Oehrtman, Goldfarb, and Guynn lawsuits that were not specifically listed in the settlement agreement.

22

The carve out provisions also do not bar Fairfield
Henry from bringing its breach of contract claims in this
action.  Although the release did specifically reserve
crossclaims for contribution and indemnification in the
Oehrtman, Goldfarb, and Guynn actions, it does not necessarily
follow that Fairfield Henry is barred by the release from
bringing a breach of contract claim against Project Transition
and Philadelphia Indemnity in this case.  The agreement only
releases the defendants from claims by Fairfield Henry for
damages that are identified in the agreement.  It does not
release the defendants from claims by Fairfield Henry for breach
of contract related to damages that are not identified in the
agreement.  The plaintiffs were not required to specifically
reserve a claim to which the release did not apply.

2.   Res Judicata

The defendants also argue that the plaintiff's claims
are barred by the doctrine of res judicata.  Fairfield Henry
asserted crossclaims against Project Transition in the Oehrtman,
Goldfarb, and Guynn lawsuits.  Following settlement, the parties
in the Guynn and Goldfarb lawsuits all signed "Joint Order[s] to
Settle, Discontinue and End with Prejudice," which were filed
with the Court of Common Pleas.  The Joint Orders requested that
the Prothonotary "[k]indly mark the above-referenced matter

settled, discontinued and ended, with prejudice, upon payment of the Prothonotary's costs only." Goldfarb Order; Guynn Order.

The defendants argue that this discontinuance with prejudice was a final judgment on the merits as to the Guynn and Goldfarb plaintiffs' claims, as well as Fairfield Henry's crossclaims. They argue that this case is barred by res judicata because it includes claims that were or could have been raised by Fairfield Henry in their crossclaims in Goldfarb and Guynn. The defendants also argue that the Guynn and Goldfarb crossclaims "encompass the claims raised by the plaintiffs in Oehrtman" and the claims of future plaintiffs, so the dismissal of Guynn and Goldfarb also bars Fairfield Henry's current claims regarding Oehrtman and future lawsuits under res judicata.

Federal courts must give the same preclusive effect to a prior state court judgment as would the courts of that state. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982). Under Pennsylvania law, "a valid final judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action." Keystone Bldg. Corp. v. Lincoln Sav. & Loan Assoc., 360 A.2d 191, 194 (Pa. 1976) (internal citations and quotations omitted). In Pennsylvania, in order for res judicata to apply, there must be "(1) identity in the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the

24

action; and (4) identity of the quality or capacity of the
parties suing or sued." Bearoff v. Bearoff Bros., Inc., 327
A.2d 72, 74 (Pa. 1974) (citations omitted).

As an initial matter, there has been no final judgment
on Fairfield Henry's crossclaims in the Oehrtman action and
there have been no final judgments in any future tenant actions,
so res judicata does not apply to Fairfield Henry's claims
related to Oehrtman and future tenant actions. Also,
Philadelphia Indemnity was not a party to the Guynn and Goldfarb
lawsuits, so res judicata does not apply to Fairfield Henry's
claims against Philadelphia Indemnity in this lawsuit. Project
Transition, on the other hand, was a party in the Guynn and
Goldfarb lawsuits and Fairfield Henry did raise a breach of
contract claim arising from the same set of facts against
Project Transition in its crossclaims. Considering the
discontinuance orders along with the Guynn and Goldfarb
settlements agreements, however, the Court concludes that there
were no final judgments as to Fairfield Henry's crossclaims
against Project Transition in those cases.

In Pennsylvania, "the entry of an order to settle,
discontinue, and end a proceeding has 'the same effect as the
entry of a judgment' in any legal proceeding." Barson's &
Overbrook, Inc. v. Arce Sales Corp., 324 A.2d 467, 468 (Pa.
1974) (quoting Sustrik v. Jones & Laughlin Steel Corp., 197 A.2d

44, 46 (Pa. 1964)).  "All parties who sign such an order to settle, discontinue, and end forever renounce their claims arising out of said action."  Id.

The preclusive effect of an order to settle, discontinue, and end with prejudice, however, only extends to the matters contemplated by the underlying settlement agreement. See U.S. v. Staff Builders, Inc., 1999 WL 179745, at *3 (E.D. Pa. Mar. 1999) ("[T]he preclusive effect of such stipulated dismissals is determined by the terms of the release agreement."); DeYoung v. Smith Facing & Supply Co., 1988 WL 92875, at *1 (E.D. Pa. Sep. 6, 1988) (holding that an "Order to settle, discontinue and end the underlying action constitue[d] a final termination of all the claims made by the parties in that litigation, since there [were] no express agreements or stipulations by any of the litigants to reserve certain claims for decision in another forum"); Hillworth v. Smith, 624 A.2d 122, 125 (Pa. Super. Ct. 1993) (holding that "the terms of the release settlement agreement determines the effect of" an order to mark the case settled, discontinued and ended).

Here, the orders to settle, discontinue, and end the Goldfarb and Guynn cases does not bar this lawsuit because the settlement agreements in those cases did not release Project Transition from Fairfield Henry's crossclaims.  The Goldfarb Settlement Agreement contains a release provision in which the

26

plaintiffs released Project Transition, Fairfield Henry, and Connecticut General Life Insurance Company from all claims and causes of action.   Goldfarb Settlement Agreement at 1, 3.  The Goldfarb Settlement Agreement specifically provides that:

> This settlement agreement is not and is not intended to be, nor is it, a release of [Project Transition], or any of their representatives, insurers, agents, servants, employees, partners, administrators, successors, or assigns, or any of them, by Fairfield Henry, LLC [], or any of their officers, directors, employees, parent or subsidiary entities, agents or insurers.

Id. at 3.

Similarly, the Guynn Settlement Agreement provides only for the release of the plaintiffs' claims against Project Transition and Fairfield Henry.   Guynn Settlement Agreement at 1, 3-4.  The Guynn Settlement Agreement specifically provides that:

> This settlement agreement and release is not intended to be, nor is it, a release of [Project Transition], or any of their representatives, insurers, agents, servants, employees, partners, associates, heirs, executors, administrators, successors or assigns, or any of them, by Fairfield Henry [], or any of their officers, directors and employees, and any and all other persons, firms, corporations, associations, parent or subsidiary entities, agents, insurers or other entities, their heirs, executors and administrators.

Id. at 4.

Based on the language of the Guynn and Goldfarb settlement agreements, the parties did not intend for the

settlement and discontinuance of those cases to preclude
Fairfield Henry from going forward with its claims against
Project Transition.  Because the release specifically preserved
Fairfield Henry's claims against Project Transition, Fairfield
Henry's breach of contract claim against Project Transition in
this lawsuit is not barred by res judicata.

> 3.   Project Transition's Immunity under the Mental
>      Health Procedures Act

        The defendants argue that Fairfield Henry's breach of
contract claim against Project Transition is also barred by
Pennsylvania's Mental Health Procedures Act (MHPA).[5]  The MHPA
provides qualified immunity to persons and entities who
participate in a treatment or placement decision for a mentally
ill patient.  The MHPA provides:

> In the absence of willful misconduct or gross
> negligence, a county administrator, a director of a
> facility, a physician, a peace officer or any other
> authorized person who participates in a decision that
> a person be examined or treated under this act, or
> that a person be discharged, or placed under a partial
> hospitalization, outpatient care or leave of absence,
> or that the restraint upon such person be otherwise

----

[5] The plaintiff argues that the defendants waived this
defense by failing to raise it in their answer.  Although
qualified immunity is an affirmative defense that should be
asserted in a defendant's responsive pleading, failure to do so
is not an automatic waiver in the Third Circuit.  Eddy v. Virgin
Islands Water & Power Auth., 256 F.3d 204, 209 (3d Cir. 2001);
Fed R. Civ. P. 8(c).  A defendant "does not waive an affirmative
defense if he raised the issue at a pragmatically sufficient
time, and the plaintiff was not prejudiced in its ability to
respond."  Id. (internal quotations omitted).

> reduced, or a county administrator or other authorized
> person who denies an application for voluntary
> treatment or for involuntary emergency examination and
> treatment, shall not be civilly or criminally liable
> for any such decision or for any of its consequences.

50 P.S. § 7114(a).

     The MHPA "establishes rights and procedures for all

involuntary treatment of mentally ill persons, whether inpatient

or outpatient, and for all voluntary inpatient treatment of

mentally ill persons."  50 P.S. § 7103.  Admission into Project

Transition's program is voluntary, so the program would have to

provide inpatient treatment[6] in order to be covered by the MHPA.

Id.  During oral argument, the defendant characterized Project

Transition as an "outpatient" program.  If Project Transition is

a voluntary outpatient program, the MHPA does not apply.

     Even if Project Transition is covered by the MHPA,

however, Fairfield Henry's breach of contract claim does not

come within the scope of the immunity provision.  The purpose of

the MHPA is to "assure the availability of adequate treatment to

persons who are mentally ill," 50 P.S. § 7102, and that purpose

is not furthered by immunizing parties from breaches of

commercial contracts.  Typical claims in which immunity is

---

     [6] "Inpatient" is defined under the MHPA as "all treatment
that requires full or part-time residence in a facility."  50
P.S. § 7103.  A "facility" is "any mental health establishment,
hospital, clinic, institution, center, day center, base service
unit, community mental health center, or part thereof, that
provides for the diagnosis, treatment, care or rehabilitation of
mentally ill persons."  Id.

provided under the MHPA include claims against facilities or doctors for the negligent supervision, treatment, or placement of mentally ill patients.  The MHPA does not excuse doctors, hospitals, and other mental health facilities from their contractual duties to third parties.

### 4.   Whether Fairfield Henry was an "Insured" under the Philadelphia Indemnity CGL Policy

Philadelphia Indemnity argues that it is entitled to summary judgment on all of Fairfield Henry's claims against it because Fairfield Henry was not an insured under the CGL policy. Specifically, Philadelphia Indemnity argues that Fairfield Henry was not an insured under the language of the CGL and circumstances of the Oehrtman, Goldfarb, and Guynn lawsuits because Fairfield Henry's liability in those lawsuits did not "arise out of" the ownership, maintenance, or use of the apartments leased to Project Transition.

Project Transition is the named insured under the Philadelphia Indemnity Commercial General Liability Policy.  CGL Policy at 1; CGL Policy, Section II, ¶ 1; Pl.'s Mot. Exh. 18, ("CGL Policy Decl. Page").  The Human Services Endorsement amends the CGL policy to include additional parties as insureds. Section J of the Human Services Endorsement provides:

Each of the following is also an insured:

      f. Managers, Landlords, or Lessors of Premises – Any person or organization with respect to their liability arising out of the ownership, maintenance, or use of that part of the premises leased or rented to you[7] subject to the following exclusions:

      This insurance policy does not apply to:

      (1) any "occurrence" which takes place after you cease to be a tenant in that premises.

      (2) Structural alterations, new construction or demolition operations performed by or on behalf of that person or organization.

Human Services Endorsement at Exh. 4.

      The defendants argue that Fairfield Henry is not covered because the claims asserted against Fairfield Henry in the Oehrtman, Goldfarb, and Guynn lawsuits do not relate to that part of the premises leased to project Transition.  Philadelphia Indemnity argues that the claims in those lawsuits all related to Fairfield Henry's alleged negligence with regard to the control and/or maintenance of the common areas of the Henry on the Park Apartments, and do not relate to the apartments leased to Project Transition.

      Fairfield Henry argues, on the other hand, that it is a covered insured under this section because (1) it is a manager, landlord or lessor of the premises leased or rented to Project Transition, and (2) Fairfield Henry's liability in the Oehrtman, Goldfarb, and Guynn lawsuits arises out of Fairfield

---

[7] The term "you" refers to Project Transition.  CGL Policy at 1.

Henry's ownership of the apartments leased or rented to Project Transition.  The Court agrees with Fairfield Henry.

Interpretation of an insurance contract is a question of law for the Court to decide.  401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005).  "Coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured."  Penn Nat'l Ins. v. HNI Corp., 482 F. Supp. 2d 568, 607 (M.D. Pa. 2007) (quoting Eichelberger v. Warner, 434 A.2d 747, 750 (Pa. 1981)).  Exceptions to an insurer's liability are interpreted narrowly against the insurer.  Id.  If a provision of an insurance policy is ambiguous, the provision is to be construed in favor of the insured and against the insurer.  USF Ins. Co. v. Mr. Dollar, Inc., 175 F. Supp. 2d 748, 751 (E.D. Pa. 2001) (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

The Pennsylvania Supreme Court has held that, "[c]onstrued strictly against the insurer, 'arising out of' [an insurance policy] means causally connected with, not proximately caused by."  Allstate Prop. and Cas. Ins. Co. v. Squires, 667 F.3d 388, 391-92 (3d Cir. 2012)(quoting Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co., 170 A.2d 571, 573 (Pa. 1961).  "But for" causation satisfies the "arising out of" language in an

insurance policy.  Id.  This formulation of "arising out of" is well settled in Pennsylvania.  Id.

Additionally, for the purpose of determining whether there was a duty to defend under an insurance policy, the Court must look at whether the facts alleged in the underlying complaint may potentially come within the coverage of the policy.  Penn Nat'l Ins., 482 F. Supp. 2d at 607 (citing Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)).  In making that determination, the Court must look beyond the claims asserted in the complaint to the factual allegations pled.  QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007).

Fairfield Henry's liability in the Guynn lawsuit arose from its ownership and the use of the apartments leased to Project Transition.  The Guynn plaintiffs alleged that they suffered loss to personal property as a result of the fire set by Patricia Gilberthorpe.  They lived in apartment B-509, directly above Ms. Gilberthorpe's apartment.  Guynn Complaint at ¶ 23-24.  They alleged that they suffered losses to personal property related to the fire in excess of $50,000.  Guynn Complaint at ¶ 28-30.  They also alleged that they suffered mental anguish as a result.  Id.  Although the Guynn plaintiffs' actual claims relate to lack of security, breach of quiet enjoyment, failure to screen tenants, etc., the complaint seeks

33

compensation for the damage to their personal property and mental anguish in all claims asserted against Fairfield Henry. Looking beyond the nature of the claims asserted, the factual allegations indicate that the Guynn plaintiffs' claims arise from the fire started in B-409.

The fire set by Ms. Gilberthorpe in apartment B-409, leased to Project Transition, was a but for cause of Fairfield Henry's liability as to those claims.  If Project Transition had not leased apartment B-409, and placed Ms. Gilberthorpe there, Fairfield Henry would not be liable to the Guynn plaintiffs for their personal property losses and personal injuries.  Fairfield Henry was therefore an insured under the CGL policy under the circumstances of the Guynn lawsuit.

Similarly, Fairfield Henry's liability in the Goldfarb lawsuit arose from its ownership and the use of the apartments leased to Project Transition.  The Goldfarb plaintiffs alleged that they suffered loss to personal property as a result of the fire in excess of $100,000.  Goldfarb Complaint at ¶ 78.  The Goldfarb plaintiffs lived in apartment B-407, presumably next door to Ms. Gilberthorpe.  Id. at ¶¶ 2-3.  As a result of the fire, most of the plaintiffs' personal possessions were damaged or destroyed, including handbags, clothing, furniture, etc.  Id. at ¶¶ 76-77.  The plaintiffs also alleged that they suffered mental and emotional injuries as a result of the fire.  Id. at ¶

34

79.  The plaintiffs' claims against Fairfield Henry relate to the fire and seek compensation for the loss of personal property and mental anguish.  As in the Guynn lawsuit, Fairfield Henry's liability in the Goldfarb lawsuit was causally related to Project Transitions lease of apartment B-409.

The Oehrtman claims also at least potentially arose from the use or ownership of that part of Henry on the Park that was leased to Project Transition.[8]  The class sought to be certified consisted of residents of Henry on the Park who were damaged by the lease between Fairfield Henry and Project Transition.  The proposed class alone is evidence that Fairfield Henry's liability was potentially causally related to the apartments leased to Project Transition.

The factual allegations also demonstrate a causal connection.  In their claims against Fairfield Henry in the Oehrtman Complaint, there are allegations that some class members suffered personal property damage and personal injuries from the fire.  Those allegations arise out of the ownership and use of apartment B-409, where the fire was started.

---

[8] Philadelphia Indemnity had a duty to defend Fairfield Henry in the Oehrtman lawsuit if the factual allegations in the Oehrtman complaint potentially come within coverage of the CGL Policy.  Fairfield Henry does not claim that Philadelphia Indemnity has a duty to indemnify Fairfield Henry for anything related to the Oehrtman lawsuit.

There are also allegations regarding Project Transition's clients' disruptive and offensive behavior throughout the Henry on the Park complex.  Conduct in the common areas of the complex at least potentially comes within "that part of the premises leased to" Project Transition because use of the common areas is contemplated by and incidental to the lease of each individual apartment.  The leases governed access to and use of Henry on the Park's common amenities.  Also, because Project Transition rented several apartments throughout the complex, which operated as meeting places for clients, use of the common areas was necessary for patients to get in and out of their apartments and to travel to meeting places.  See, e.g., ZKZ Assoc. LP v. CNA Ins. Co., 679 N.E.2d 629, 629 (N.Y. 1997) (finding that an injury sustained on the sidewalk outside of the building fell within "that part of the described premises which is leased to" the insurance policy holder because use of the sidewalk was necessary for access in and out of the leased premises).

Thus, construing the coverage terms broadly, and considering that the duty to defend is triggered if any claims may potentially come within coverage, Fairfield Henry was an "insured" for the purpose of Philadelphia Indemnity's duty to defend in the Oehrtman lawsuit.

5.  Whether Philadelphia Indemnity's Coverage was "Excess"

Finally, Philadelphia Indemnity argued in its motion that it is entitled to summary judgment on the plaintiff's claims, even if Fairfield Henry was an insured under the CGL Policy, because Philadelphia Indemnity's coverage was "excess."[9] Philadelphia Indemnity argued that the CGL policy is excess because Fairfield Henry had other insurance that was in effect at the time of the fire, provided by New Hampshire Insurance Company, and because New Hampshire Insurance provided a defense in the Goldfarb and Guynn cases.  Philadelphia Indemnity did not include any evidence in support of its argument.

In response, Fairfield Henry provided evidence that the CGL Policy was not "excess" because Fairfield Henry's New Hampshire Insurance Policy was not effective prior to the policy period of the CGL Policy.  Pl.'s Resp. Exh. V ("New Hampshire Insurance Policy") at 1.  The defendants did not file a response, and had no argument in response at oral argument.  The Court therefore finds that the CGL Policy was not excess.

---

[9] The CGL Policy was "excess" if there was another insurance policy in effect that provided coverage if that other insurance policy was effective prior to the beginning of the CGL Policy's policy period.  CGL Policy at 11-12.

C.    <u>Fairfield Henry's Motion for Summary Judgment</u>

Having found that the defendants are not entitled to summary judgment based on any of the arguments in their motion, the Court will move on to consider the plaintiff's motion for summary judgment.  Fairfield Henry's complaint asserts two claims against defendant Philadelphia Indemnity.  First, Fairfield Henry asserts a claim for breach of contract for Philadelphia Indemnity's failure to defend and indemnify Fairfield Henry in the <u>Oehrtman</u>, <u>Goldfarb</u>, and <u>Guynn</u> lawsuits.

Second, Fairfield Henry seeks a declaratory judgment declaring that the Philadelphia Indemnity CGL Policy provides liability coverage to Fairfield Henry for the claims in the <u>Oehrtman</u>, <u>Goldfarb</u>, and <u>Guynn</u> lawsuits and any future lawsuits relating to the 2009 fire or the presence of Project Transition at Henry on the Park; and (2) that Philadelphia Indemnity has a duty to defend Fairfield Henry in future lawsuits relating to the 2009 fire or the presence of Project Transition at Henry on the Park.

Fairfield Henry also asserts a claim against Project Transition for breach of contract, for its failure to reimburse Fairfield Henry for attorney's fees, costs, and settlement payments made in the <u>Oehrtman</u>, <u>Goldfarb</u>, and <u>Guynn</u> lawsuits, pursuant to the Apartment Lease Contracts.

38

The defendants did not respond to the plaintiff's motion for summary judgment, except for referencing their own motion for summary judgment.  For the reasons discussed below, the Court concludes that Fairfield Henry is entitled to summary judgment on the issue of liability with respect to Philadelphia Indemnity's duty to defend and indemnify in the Goldfarb and Guynn lawsuits, Philadelphia Indemnity's duty to defend in the Oehrtman lawsuit, and Project Transition's breach of contract. Fairfield Henry is not entitled to summary judgment on its claims regarding future tenant lawsuits.  The Court will also reserve judgment on the issue of damages.

> 1.   Philadelphia Indemnity's Duty to Defend and Indemnify in the Oehrtman, Goldfarb and Guynn Lawsuits

In determining whether an insurer owes a duty to defend, the Court must first determine the scope of insurance coverage, and then "examine the complaint in the underlying action to determine whether it triggers coverage." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).  An insurer owes a duty to defend an insured when the allegations in the complaint potentially come within insurance coverage. Penn Nat'l Ins., 482 F. Supp. 2d at 607 (citing Frog, Switch & Mfg. Co., 193 F.3d at 746).  If one claim of a multi-claim lawsuit is potentially covered, the insurer owes a duty to defend the

insurer on all claims until it is clear that the insured cannot recover on a covered claim.  Id.

The question of whether a claim against an insured is potentially covered is answered "by comparing the four corners of the insurance contract to the four corners of the complaint." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517 (3d Cir. 2012) (internal citation omitted).  "[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead it is necessary to look at the factual allegations contained in the complaint." Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

The duty to indemnify is triggered only if the insurance policy actually covers the claimed incident. Pacific Indem. Co. v. Linn, 590 F. Supp. 643, 650 (E.D. Pa. 1984) (citing C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 483 (3d Cir. 1981), aff'd 766 F.2d 754 (3d Cir. 1985). Under Pennsylvania law, "[c]laims for indemnification arise only when the party seeking indemnity has made a payment on the underlying claim." McClure v. Deerland Corp., 585 A.2d 19, 23 (Pa. Super. Ct. 1991).

The CGL Policy obligates Philadelphia Indemnity to defend and indemnify its insured under the following conditions:

1. Insuring Agreement

a. We will pay those sums that the insured becomes
legally obligated to pay as damages because of "bodily
injury" or "property damage" to which this insurance
applies.  We will have the right and duty to defend
the insured against any "suit" seeking those damages
. . . .

b. This insurance applies to "bodily injury" and
"property damage" only if:

(1) The "bodily injury" or "property damage" is
caused by an "occurrence" that takes place in the
"coverage territory". . . .

CGL Policy at 1.

"Bodily injury" is defined as "bodily injury, sickness

or disease sustained by a person, including death resulting from

any of these at any time." Id. at 14.  "Property damage" is

defined as "physical injury to tangible property, including all

resulting loss of use of that property" or "loss of use of

tangible property that is not physically injured." Id. at 16-

17.  An "occurrence" is "an accident, including continuous or

repeated exposure to substantially the same general harmful

conditions." Id. at 16.  "Coverage territory" includes anywhere

in the United States. Id. at 14.  A "suit" includes a "civil

proceeding in which damages because of 'bodily injury,' [or]

'property damage' . . . are alleged." Id. at 17.

The Guynn and Goldfarb claims against Fairfield Henry

allege that the plaintiffs suffered property damage and personal

injuries.  Those suits, therefore, fall within the CGL policy's

41

coverage.  Having already concluded that Fairfield Henry was an
"insured" in the contexts of the Guynn and Goldfarb lawsuits,
the Court concludes that Philadelphia Indemnity had a duty to
defend Fairfield Henry in those lawsuits.  Philadelphia
Indemnity breached the terms of the CGL Policy by refusing to
defend Fairfield Henry in those lawsuits.

        The Guynn and Goldfarb lawsuits settled, and Fairfield
Henry made settlement payments to the plaintiffs.  Philadelphia
Indemnity therefore also had a duty to indemnify Fairfield Henry
for damages it paid to the Guynn and Goldfarb plaintiffs for
personal injuries and property damage.  Because the parties have
not yet fully briefed damages, the Court takes no position on
the amount for which Philadelphia Indemnity has a duty to
indemnify the plaintiff.

        The Oehrtman Complaint also alleges damage to personal
property and personal injuries suffered by the class members due
to the fire and due to Project Transition's clients' conduct.
Many of the claims directed at Fairfield Henry relate to
Fairfield Henry's negligent maintenance, security, and
communication which do not necessarily depend on the presence of
Project Transition and do not relate to property damage or
personal injury.  But, because some of the factual allegations
against Fairfield Henry may potentially be covered, Philadelphia
Indemnity had a duty to defend Fairfield Henry until it was

clear that no claims were covered.  Philadelphia Indemnity's
duty to defend would have been extinguished when the Court of
Common Pleas denied class certification, at which point no
claims against Fairfield Henry would move forward.[10]
Philadelphia Indemnity, therefore, had a duty to defend up until
that point.  Philadelphia Indemnity has no duty to indemnify
Fairfield Henry in the Oehrtman lawsuit, because there was no
settlement or finding of liability against Fairfield Henry in
that case, and because Fairfield Henry did not make any payments
to the Oehrtman plaintiffs.

> 2.   Philadelphia Indemnity's Duty to Defend and
>      Indemnify in Future Tenant Lawsuits

Fairfield Henry also seeks a declaratory judgment
which declares that Philadelphia Indemnity has a duty to defend
and indemnify Fairfield Henry in future lawsuits by Henry on the
Park residents that arise from Project Transition's presence on
the property.  At the time the parties filed their summary
judgment motions, the plaintiff anticipated that seventy-one
individual tenant lawsuits, triggered by the Oehrtman denial of
class certification, would be filed against Fairfield Henry.
During oral argument, the plaintiff asserted that fifty-five

---

[10] Fairfield Henry asserts that it is no longer the landlord
of Henry on the Park, so there are no remaining claims against
it in the Oehrtman action.

tenant lawsuits, with claims identical or nearly identical to
the Oehrtman claims, have since been filed.

Fairfield Henry is not entitled to a declaratory
judgment on the issue of whether Philadelphia Indemnity has a
duty to defend and indemnify in those lawsuits or in any
hypothetical future tenant lawsuits.  A court must determine
whether an insurance company has a duty to defend by comparing
the four corners of the insurance policy with the four corners
of the underlying complaint.  The Court cannot make this
determination about hypothetical lawsuits that may or may not be
filed against the plaintiff.  The Court also cannot make this
determination regarding the fifty-five tenant lawsuits that have
allegedly already been filed because the Court has not been
presented with those complaints.[11]

Similarly, Fairfield Henry is not entitled to a
declaratory judgment on whether Philadelphia Indemnity has a
duty to indemnify in future tenant cases, because any claim for
indemnification is premature until a party makes payment on an
underlying claim.  The Court has not been presented with any
evidence that payments have been made on any other existing

---

[11] During oral argument, the plaintiff suggested that those
complaints could be filed with the Court following the Court's
decision on the motions for summary judgment, in order to decide
whether this decision applies to those complaints.  The Court
takes no view on whether such a procedure would be appropriate
in this case.

claims, and the Court cannot make a determination on any hypothetical future claims.

      3.  <u>Project Transition's Breach of Contract</u>

      The plaintiff argues that it is also entitled to summary judgment on its breach of contract claim against Project Transition.  Fairfield Henry argues that Project Transition entered into a lease agreement with Fairfield Henry.  The language of the lease requires Project Transition to reimburse Fairfield Henry for damages caused by Project Transition's employees, business invitees and guests.  Project Transition breached the lease when it failed to reimburse Fairfield Henry for damages that were caused by Project Transitions guests, employees and business invitees.  The defendants have not responded to the merits of Fairfield Henry's breach of contract claim.  The Court will grant summary judgment for Fairfield Henry on this issue.

      The Court must interpret and enforce unambiguous agreements according to their terms.  <u>McDowell v. Philadelphia Hous. Auth.</u>, 423 F.3d 233, 238 (3d Cir. 2005).  If a contract is unambiguous, the Court construes the contract as a matter of law.  <u>Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.</u>, 619 F.2d 1001, 1011 n.10 (3d Cir. 1980).  When the language is clear and

unambiguous, the Court must give effect to that language.  401
Fourth St., Inc., 879 A.2d at 171.

The lease agreement prohibits Project Transition and
its guests or occupants from engaging in certain activity:

> 21. PROHIBITED CONDUCT.  You and your occupants or
> guests may not engage in the following activities;
> behaving in a loud or obnoxious manner; disturbing or
> threatening the rights, comfort, health, safety, or
> convenience of others (including our agents and
> employees) in or near the apartment community . . . .

Apartment Lease Contract ¶ 21.

The leases require Project Transition to reimburse
Fairfield Henry for damages and costs caused by Project
Transition's negligent or intentional conduct or violation of
the lease provisions, such as the prohibited conduct provision:

> 13. DAMAGES AND REIMBURSEMENT. You must promptly
> reimburse us for loss, damage, governmental fines, or
> cost of repairs or service in the apartment community
> due to a violation of the Lease Contract or rules,
> improper use, negligence, or intentional conduct by
> you or your invitees, guests or occupants.

Apartment Lease Contract ¶ 13.

Project Transition's occupant or guest, Patricia
Gilberthorpe, set fire to Apartment B-409.  The plaintiffs in
the Oehrtman, Goldfarb, and Guynn lawsuits alleged that the fire
set by Ms. Gilberthorpe caused damage to their personal
property.  The plaintiffs in those lawsuits also alleged that
Project Transition's clients engaged in threatening and
disturbing conduct toward them.  The complaints also alleged

46

that Project Transition's clients disturbed the comfort and safety of the plaintiffs.

Paragraph 13 of the lease required Project Transition to reimburse Fairfield Henry for loss and damage due to a violation of the lease or negligent or intentional conduct of its occupants or guests.  Fairfield Henry sustained losses and damages in the form of attorney's fees, litigation costs, and payments made to the Goldfarb and Guynn plaintiffs to settle those cases.  Project Transition's refusal to reimburse Fairfield Henry for those costs constitutes a breach of the agreement.[12]  The Court therefore grants summary judgment to the plaintiff on this breach of contract claim.

An appropriate order shall issue separately.

---

[12] The Court does not decide, at this point, the amount of damages for which Project Transition is liable to Fairfield Henry.

47